Paul M. KOLESA, Plaintiff,

v.

John F. LEHMAN, Jr., Secretary of the
Navy, Defendant.

No. 81–CV–545.

United States District Court,
N. D. New York.

March 17, 1982.

John C. Scholl, P. C., Utica, N. Y., for
plaintiff; John C. Scholl, Frank Policelli,
Utica, N. Y., of counsel.

George H. Lowe, U. S. Atty., Syracuse, N. Y., for defendant; Joseph A. Pavone, Asst. U. S. Atty., Syracuse, N. Y., Karen Heller, Law Student Intern, of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

Plaintiff, a scholarship student in the Naval Reserve Officers Training Corps at the University of Rochester, New York ("NROTC") was disenrolled from the NROTC program and ordered to commence two years active duty in the United States Navy as an enlisted man following a hearing before a Review Board which found that plaintiff had used illicit drugs and shown only marginal military performance in the NROTC program. Rather than pursue an appeal to the Board for the Correctional Naval Records ("BCNR") pursuant to 10 U.S.C. § 1552 and 32 C.F.R. §§ 723.1 —.11, plaintiff brought this action on May 26, 1981 to prevent the defendant Secretary of the Navy from ordering plaintiff to active enlisted duty. This Court granted a TRO on May 29, 1981, and thereafter the parties filed a written consent to continue the restraint until entry of final judgment.

On March 9, 1982, this matter was before the Court on defendant's motion to dismiss the complaint or, in the alternative, for summary judgment. During the hearing it became apparent that the material facts were not in dispute; accordingly, the Court informed the parties that the case would be considered submitted on cross-motions for summary judgment with respect to plaintiff's due process claims. Having considered the pleadings and exhibits on file, together with the briefs and argument of counsel, the Court agrees with the Secretary that plaintiff has failed to exhaust his available remedies before the BCNR, and for that reason, the Court declines to rule on plaintiff's constitutional claims at this time. For the reasons stated below, the Court will retain jurisdiction and continue the TRO in effect in order to maintain the status quo and give plaintiff a reasonable opportunity to present his complaint to the BCNR.

## FACTS

Plaintiff enrolled in the NROTC in September 1978, during his sophomore year at the University of Rochester. At about that time, plaintiff executed a NROTC Scholarship Service Agreement in which he agreed to enlist in the Naval Reserve for a period of six years in exchange for a college education at the Navy's expense. Upon successful completion of his academic and NROTC curriculum, plaintiff agreed to accept a commission in the Navy or Marine Corps, if offered, and to serve a minimum period of active duty. Under the terms of the Agreement, the Secretary of the Navy retained the right to release plaintiff from his contractual obligations and separate him from the training program in the event that the Secretary determined that the best interests of the naval service require such actions. Defendant's Exhibit A.

In connection with his enrollment, plaintiff also executed a drug usage statement, NAVCRUIT FORM 1100/11, in which he denied ever having used either marijuana or other stimulants, and categorically rejected "the abuse of drugs both now and in the future." Defendant's Exhibit A.

Plaintiff's scheduled graduation date was May 1981, and on September 25, 1980, he reported for a pre-commissioning physical examination. During his examination, plaintiff told the doctor that he had tried marijuana, hashish and an over-the-counter stimulant. These admissions were subsequently reported to the NROTC authorities on December 1, 1980.

Meanwhile, on November 17, 1980, plaintiff received a Military Aptitude Warning letter from his commanding officer. The letter informed plaintiff of his low aptitude grades during the past two semesters and of his "marginal performance" during the current semester. The letter further advised plaintiff that he was required to fulfill certain stated requirements and that, if his deficient aptitude continued, he would be called before a Review Board in accordance with regulations, CNETINST 1533.-

12A, para. 210, and face possible disenrollment and an order to active duty. Defendant's Exhibit D.

On December 6, 1980, following receipt of both the medical report and the Military Aptitude letter, the commanding officer requested that a Board of Review be convened pursuant to CNETINST 1533.12A, Art. 210. The notice sent to plaintiff stated that the purpose of the Board "will be to investigate the alleged use of illegal drugs and recommend to the Professor of Naval Science a proper course of action." Court Exhibit 1, ¶ 2. The notice informed plaintiff of both the seriousness of the charge— "... the use of illegal drugs ... is a major breach in discipline," and of the possible consequences: "If it is found that he did use illegal drugs he may be disenrolled from the NROTC Program. Also, because of his advanced standing he may be required to serve on active duty for two years in an enlisted status." *Id.*, ¶ 1. Plaintiff was also informed that his class advisor, Lieutenant Robert Ballard, would sit on the three-member Board of Review. *Id.* Finally, the notice informed plaintiff of his rights (1) to appear before the Board, (2) to submit written statements and documents, and (3) to call witnesses on his behalf. *Id.*, ¶ 3.

The Review Board hearing was held on December 16, 1980. The parties agree that plaintiff was not represented by legal counsel at the hearing and that he was not advised, prior to the hearing, of any right to be so represented. Plaintiff alleges, however, that sometime before the hearing he met with Lt. Ballard and was told how to conduct himself at the hearing. Plaintiff also avers that Lt. Ballard advised that if plaintiff submitted a written statement indicating that his drug use was now behind him and that he would never do it again, no disciplinary measures would be taken. Complaint, ¶ 9; Affidavit of Paul Kolesa, ¶ 4 (May 26, 1981).

In any event, plaintiff did submit a written statement to the Board. In his statement, plaintiff recites his strong academic record and his active participation in certain NROTC activities. Plaintiff also explained that the "gung-ho attitude" of his peers heightened his sense of being an "outsider" and as a result, he was less aggressive in NROTC activities than he was inclined to be. Defendant's Exhibit C. With respect to the drug charges, plaintiff stated that while he admitted to having "tried" or experimented with marijuana, he had never been a "user or pusher," and "(t)his experimentation is now in my past and I will now throw my emphasis on upcoming exams and the spring volleyball season." *Id.* Plaintiff closed with the hope, "that this statement clears the air on my past and that the board can see fit to retain me as a scholarship student," and "consider me a capable candidate for the Navy officer program." *Id.*

In addition to plaintiff's written statement, the Review Board also considered his academic and midshipman records. Lt. Ballard noted that while plaintiff's academic record was above average, his military aptitude and class rank were consistently at or near the bottom of the NROTC class. The Board also noted that because of a class scheduling conflict, plaintiff had not attended Naval Science drill since the end of his sophomore year. After reviewing the Military Aptitude Warning letter and the medical report, the Board questioned plaintiff concerning the drug charge. According to the written summary of the Board's decision, plaintiff stated that he first used marijuana during his senior year in high school and that he "continued to use/experiment with it about twice a year since then." Defendant's Exhibit E. Moreover, plaintiff "acknowledged that he made a false statement while being processed for a scholarship during his sophomore year in that he indicated no prior use of illegal drugs." *Id.*

The Review Board issued its decision on December 17, 1980. The Board found that plaintiff had used illegal drugs, and recommended that: "based upon his use of illegal drugs and his marginal military performance that he be disenrolled from the NROTC Program and ordered to active duty upon completion of his degree in May of 1981." *Id.* On February 27, 1981, the

Secretary of the Navy, or a subordinate acting at the Secretary's direction, affirmed the Board's recommendation that plaintiff be disenrolled, and ordered plaintiff to embark on two years of active enlisted duty upon graduation from the University of Rochester. It is undisputed that plaintiff never sought review by the BCNR.

In this Court, plaintiff contends that the Secretary's decision deprived him of a protected property interest without due process of law in that he did not receive a full and fair hearing by the Board of Review. Specifically, he asserts that the Review Board hearing violated his right to due process in the following respects: (1) the notice was inadequate because it did not inform him that his military performance and his 1978 drug use statement were at issue; (2) he was denied that right to have counsel represent him at the hearing, and (3) that Lt. Ballard improperly advised plaintiff before the hearing, yet continued to act as both witness and judge on the Review Board, thereby depriving plaintiff of the right to an impartial decision-maker.[1]

Defendant's motion for summary judgment raises three essential points: (1) this Court lacks subject matter jurisdiction to interfere with an internal military decision committed to the Secretary's discretion; (2) that plaintiff is not entitled to proceed in this forum because he has failed to exhaust his remedies in the BCNR, and (3) that the Board of Review hearing was conducted in accordance with the constraints of the Due Process Clause of the Fifth Amendment. Plaintiff, on the other hand, contends that this Court has jurisdiction to consider whether he was accorded due process in connection with his disenrollment from the NROTC program, and whether he is entitled to a new hearing before the Board of Review in accordance with the requirements of due process.

## DISCUSSION

■ While the Navy is given wide berth in which to order its internal affairs, those in command positions must take care to observe the basic requirements of constitutional due process. *See Friedberg v. Resor,* 453 F.2d 935, 937 (2d Cir. 1971). It is now well settled that the federal courts have jurisdiction "where there is a substantial claim that prescribed military procedures violates one's constitutional rights." *Reed v. Franke,* 297 F.2d 17, 21 (4th Cir. 1961); *accord, Andrews v. Knowlton,* 509 F.2d 898 (2d Cir. 1975).

■ This Court is also satisfied that the nature of plaintiff's interest in avoiding disenrollment from the NROTC scholarship program, which he had pursued with the goal of becoming an officer, is sufficiently analogous to the interest of a cadet in avoiding expulsion from a military academy so as to warrant equivalent due process protection. *Hickey v. Commandant,* 461 F.Supp. 1085 (E.D.Pa.1978); *Greenblatt v. Schlesinger,* No. B–74–1204, slip op. at 4–5 (D.Md. December 28, 1976).

■ Turning then to the question of what process is due, this Court looks in the first instance to the line of Second Circuit decisions outlining the flexible contours of due process in the context of expulsion from the military academies. *See Andrews v. Knowlton, supra; Hagopian v. Knowlton,* 470 F.2d 201 (2d Cir. 1972); *Wasson v. Trowbridge,* 382 F.2d 807 (2d Cir. 1967). In outline, these cases hold that the individual must be given a full and fair hearing. The individual must receive notice of the charges against him and a fair opportunity to present a defense. He should be given the opportunity to appear, and to present statements, evidence and witnesses on his behalf. With respect to the right to counsel, the Court in *Wasson* reasoned that counsel is not ordinarily required where the proceeding is noncriminal in nature; where the hearing is essentially investigative and the government does not proceed with counsel, and where the individual concerned

---

1. Plaintiff's complaint included numerous other claims, including a *Bivens*-type tort action against the Secretary and a breach of contract claim. Plaintiff abandoned these claims at the hearing, and they will not be discussed further.

is sufficiently mature and educated to develop the facts adequately. As the court stated in *Hagopian*, "(u)nlike the welfare recipient who lacks the training and education needed to understand his rights and express himself, the cadet should be capable of doing so." 470 F.2d at 211–212 (holding that due process does not require representation by counsel before the Academic Board at West Point). Under these standards, and in light of the fact that the events that triggered the Board of Review in this case were either admitted or otherwise objectively evidenced, this Court is satisfied that due process did not require that Kolesa be represented by counsel at the Board of Review hearing. *See Hickey v. Commandant, supra,* 461 F.Supp. at 1096–97.[2]

■ Plaintiff also contends that he was denied due process because Lt. Ballard was a member of the three-man Review Board notwithstanding his earlier contact with plaintiff in the role of class advisor. Since this Court's disposition of the present motions will require plaintiff to repair to the BCNR where, presumably this alleged taint will not exist, it will suffice for present purposes to observe that for plaintiff to sustain his challenge, he must present specific evidence to overcome:

> a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weaknesses, conferring investigative and adjudicative powers on the same individual poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be implemented.

*Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975).

■ Plaintiff's claim that he did not receive adequate notice of the matters that would be considered by the Board of Review, is more troublesome. By its terms, the notice only served to inform plaintiff

that his admission of drug usage during the pre-commissioning physical was to be investigated. At the hearing, however, plaintiff was also examined concerning the 1978 NAVCRUIT form in which he denied ever having used certain drugs, including marijuana. According to the Board's written decision, plaintiff "acknowledged" that his earlier statement was false.

Plaintiff now argues that Navy policy recognizes, "that some people have clear potential to become creditable performers despite limited exposure to drug abuse," and that waivers may be granted to applicants who truthfully admit to prior use of drugs. Recruiting Manual, 1–I–4A(3)(4), reprinted in Defendant's Brief in Support of Motion for Summary Judgment. This policy is apparently premised on the view that "such applicants can be expected to be more desireable than those who conceal their prior use of drugs and thereby become guilty of fraudulent entry." *Id.* Relying upon this distinction between applicants who admit, and those who conceal prior drug use, plaintiff asserts that at the time he "acknowledged" the falsity of his earlier statement, he was unaware that his answer would prove dispositive of his eligibility for a waiver under the Navy guidelines. Plaintiff further contends that, had he been aware of these consequences, he would have defended against the false statement charge by arguing that he did not consider his mere experimentation with marijuana before 1978 as constituting "use" or "abuse" within the meaning of the form. Had this explanation been accepted, plaintiff continues, the uncontested finding that he had experimented with marijuana during his NROTC program might not have led to a recommendation of disenrollment.

The difficulty with plaintiff's argument on this point is two-fold. First, the argument itself is somewhat attenuated, and the Board's written decision does not explicitly rely on plaintiff's acknowledgement of an earlier false statement as a reason for the

---

**2.** Plaintiff's claim that his submission of a written statement at Lt. Ballard's suggestion somehow violated his Fifth Amendment privilege against self-incrimination is plainly without merit. *See Andrews v. Knowlton, supra,* 509 F.2d at 908.

recommendation of disenrollment. It would be difficult, if not impossible, to determine what role the false statement played in the Board's collective decision. Second, in light of the availability of an alternative forum, fully capable of listening to plaintiff's explanation and providing answers at a military level, a decision on the adequacy of the notice would involve unnecessary constitutional adjudication. *See Nelson v. Miller*, 373 F.2d 474, 481 (3d Cir. 1967).

As the Secretary points out, resort to the BCNR provides plaintiff with relief in the form of a new hearing. 10 U.S.C. § 1552. At a BCNR hearing, plaintiff is entitled to access to records, the right to be represented by counsel, to present documentary evidence and to call witnesses on his behalf. 32 C.F.R. § 723.4, 5. It is the opinion of this Court that an airing of plaintiff's claims in a BCNR hearing will cure any constitutional deficiencies that may have attended his Board of Review hearing, will provide the Secretary with a useful, second-look at an important decision, and will accord with the accepted judicial practice of avoiding unnecessary resolution of constitutional issues. *Ashwander v. TVA*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). Finally, it is clear that the three year period in which claims must be brought before the BCNR has not yet run. Accordingly, this Court will refrain from decision on the adequacy of notice issue until plaintiff has completed the review procedure before the BCNR. In the interim, the Court retains jurisdiction over this case and, in accordance with the stipulation entered earlier, the TRO shall remain in full force and effect throughout the BCNR proceedings.

### ORDER

For all of the foregoing reasons, the defendant's motion for summary judgment is granted in the following respects and denied in all other respects:

1. Plaintiff's contract and tort claims against the defendant are dismissed;

2. Judgment is granted in favor of the defendant and against plaintiff with respect to plaintiff's claims contained in paragraphs 16 through 18, and 21.

Plaintiff's motion for summary judgment is denied in its entirety. Plaintiff is directed to apply for review of the Secretary's decision in accordance with 32 C.F.R. § 723.1—11 before the Board for the Correction of Naval Records within forty-five (45) days from the entry of this order. In the event that plaintiff fails to make timely application to the BCNR, and in any event upon completion of the BCNR proceeding, the parties shall notify the Court and request entry of appropriate orders. Jurisdiction is retained and in accordance with the stipulation on file, the temporary restraining order entered on May 29, 1981 shall continue in full force and effect.

IT IS SO ORDERED.