**Robert F. CODY, Plaintiff,**

v.

**Willard W. SCOTT, Lt. General, as Superintendent of the United States Military Academy, West Point, New York, et al., Defendants.**

No. 83 Civ. 4216 (RO).

United States District Court, S.D. New York.

July 5, 1983.

Cahn, Wishod & Wishod, Melville, N.Y., for plaintiff; Richard C. Cahn, Melville, N.Y., of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., U.S. Atty.'s Office, New York City, for defendant; Frederick M. Lawrence, Asst. U.S. Atty., New York City, of counsel.

## OPINION AND ORDER

OWEN, District Judge.

Plaintiff Robert F. Cody, a fourth-year cadet at the United States Military Acade-my, West Point, New York, commenced this action to stay his separation from the Academy as a consequence of certain events described hereafter. Before me are cross-motions for summary judgment by plaintiff and defendants Lt. General Willard W. Scott, the Superintendent of the Academy and John O. Marsh, Jr., the Secretary of the Army.

On March 11, 1983, a military policeman confronted plaintiff and a fellow cadet as they sat in that latter's car in a parking lot on Academy grounds. At that time the military policeman discovered certain evidence indicating that the two cadets possessed and had recently used marijuana.[1] As a consequence, they were taken to a military police station at the Academy and defendant Scott, as their military commander, was informed. At that time Paragraph 10.09 of the Regulations for the United States Military Academy (USMA Reg. ——") empowered Scott to proceed either by formal military court martial, see 10 U.S.C. § 934, involving possible criminal penalties or by a less formal investigative hearing, see USMA Reg. 1–10, involving possible separation from the Academy. Scott elected to convene an investigative hearing to inquire into the incident, and appointed Lt. Colonel David M. McClellan as Investigating Officer ("I.O.").

In the performance of his duties as I.O., McClellan informed plaintiff of the hearing and the charges against him. He also noti-

---

1. Plaintiff and his fellow-cadet Ralph J. Carbone were arrested on March 11, 1983 when a military policeman, SP4 Jimmy L. Gutierrez, responded to a report that there was a suspicious car parked in a cadet parking lot. Upon arriving at that lot, Gutierrez approached the car in which plaintiff and Carbone sat. Carbone then got out of the vehicle to approach Gutierrez and at that time Gutierrez smelled an odor which he recognized as the smell of burning marijuana. After sticking his head inside a window of the car and confirming his belief that he smelled marijuana, Gutierrez ordered Carbone and plaintiff to roll up the windows of the car and they waited for the arrival of another patrol.

Shortly thereafter, Sergeant Michael J. Rath and Staff Sergeant David M. Dragich arrived to assist Gutierrez. Dragich then sat in the car and detected the smell of burning marijuana. He concluded that probable cause existed that there was burning marijuana in the car and he authorized Gutierrez and Rath to search the vehicle.

Upon conducting that search, Rath found a soda can which had been converted into a smoking device with smoke emanating from the top and a plastic bag containing what was believed to be marijuana. Gutierrez found a marijuana stem in the car. In addition, burning papers from a marijuana cigarette were found as well.

Following their arrest, plaintiff and Carbone were taken to the military police station and advised of their rights. After a search warrant was obtained, both plaintiff and Carbone provided urine samples which upon analysis indicated that they had been smoking marijuana.

fied plaintiff of his right to consult with legal counsel—either civilian or military—and to present evidence at the hearing as well as to cross-examine adverse witnesses, object to the introduction of evidence, and remain silent if he so desired. Regulation 1–10 does not permit counsel to participate at the investigative hearing,[2] but does require the exclusion of evidence seized in a *bad faith* unlawful search.[3]

The investigative hearing was held over five days in April, 1983. Plaintiff, who elected to avail himself of the assistance of military counsel, participated in the hearing, cross-examined witnesses, called witnesses, and testified on his own behalf. His counsel, although not allowed to participate in the hearing, assisted in the preparation and conduct of the case and was available for consultation even during the hearings themselves. At the hearing, certain evidence which plaintiff now claims should have been excluded under the Fourth Amendment was admitted.

On May 2, 1983, the I.O. issued his findings and recommendations. He concluded that plaintiff had wrongfully possessed and used marijuana in violation of the USMA regulations and he recommended that plaintiff be separated from the Academy. His recommendation was forwarded to defendant Scott together with a brief prepared by plaintiff's counsel. Scott thereupon issued prior to issuing his recommendation that plaintiff be separated from the Academy, transferred to the Army Reserve and ordered to active duty. On May 23, 1983, this recommendation was forwarded to the Department of the Army. Further action on Scott's recommendation has been held in abeyance during this Court's consideration of the issues. Plaintiff has not pursued his remedies with the Army Board of Correction of Military Records pursuant to 10 U.S.C. §§ 1551–54.

To avoid the anticipated consequences of the I.O.'s recommendation, plaintiff commenced this action and now seeks injunctive relief compelling, in effect, his reinstatement to the Academy. Two questions are before me: 1) whether plaintiff's action is foreclosed because he has failed to exhaust his administrative remedies, and 2) whether, if not, his due process rights were violated by the use of the investigative hearing in these circumstances.

As to the first issue, defendants contend that plaintiff has failed to exhaust at least two avenues of administrative relief still available to him. The Secretary of the Army has not yet reviewed and approved the recommendation of separation and plaintiff has not taken his appeal to the Army Board for Correction of Military Records pursuant to 10 U.S.C. §§ 1551–54. Either of these avenues, at least facially, affords plaintiff the opportunity for full relief.

■ It is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–464, 82 L.Ed. 638 (1938). This principle has been applied to exhaustion of the military administrative process on numerous occasions, *e.g., Stanford v. United States,* 413 F.2d 1048, 1049 (5th Cir.1969) and it should not be ignored

---

**2.** Regulation 1–10(3)(c) provides:

> *Counsel.* Respondent may consult with legal counsel prior to the hearing, though counsel may not appear at the Investigative Hearing. For purposes of consultation, the Respondent may obtain civilian counsel, at no expense to the government, or military counsel from the Defense Branch, Office of the Staff Judge Advocate.

**3.** Regulation 1–10(e)(h)(3)(e) states:

> *Bad faith unlawful searches.* If a member of the Armed Forces, acting in an official capacity (e.g., military policeman, commander), authorized, conducted, or directed a search which he knew was unlawful under the Fourth Amendment, United States Constitution, as applied to the Military community, evidence obtained as a result of that search may not be accepted or considered against any Respondent whose rights were violated by the search. In all other cases, evidence obtained as a result of any search or inspection may be accepted.

absent special circumstances, *e.g., Sohm v. Fowler,* 365 F.2d 915 (D.C.Cir.1966). Neither the low probability of success in the administrative proceeding, *e.g., Hodges v. Callaway,* 499 F.2d 417 (5th Cir.1974), nor the assertion that administrative review proceedings threatened violation of constitutional rights, *e.g., Nelson v. Miller,* 373 F.2d 474 (3rd Cir.1967), has been held to meet this special circumstance standard.

■ Plaintiff has not advanced adequate justification to short-cut the normal administrative procedure. Although his chances of success before the military may be realistically assessed as slim, a disciplinary proceeding such as that before the court is particularly within the competence of the Board of Correction. *See, e.g., Kolesa v. Lehman,* 534 F.Supp. 590 (N.D.N.Y.1982). Plaintiff's action is therefore barred by the administrative exhaustion doctrine.

■ Even were the administrative exhaustion doctrine not applicable here, however, plaintiff's petition would still be unfounded. Without question, plaintiff could not be separated from the Academy, transferred to the Army Reserve, and ordered to active duty without being afforded certain procedural due process. Nevertheless, the fact that plaintiff must be afforded some procedural protection prior to the deprivation of protected rights does not carry with it the guarantee that he is entitled to the full panoply of protection available in a military court martial even though the underlying charges could have justified invoking such a proceeding. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *see, Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976) (wherein the Supreme Court sets forth a general formula for resolving what process is due in a particular situation). In order to determine what process is due, a court must focus on the rights of the individual at peril, the sanctions with which he is faced, and the protections that will be afforded him before he is deprived of those rights and those sanctions are applied. Contrary to plaintiff's assertions here, an individual is not entitled to the full range of procedural protection simply because he *could have been* exposed to criminal charges. He is not. What is at issue here is plaintiff's fitness to continue training to be a graduate of West Point and thereafter assume command roles in the United States Army. Thus, it is the possible sanction to which one must look in order to determine what procedural protection is appropriate. Where the sanction is less than could be imposed by a court martial, procedural protection may be adjusted commensurately.

While I note the very real loss to which plaintiff is subjected by his separation from the academy, that eventuality is no more or less than that for which plaintiff contracted when he entered West Point.[4]

With this background in mind, it is clear that none of the individual claims which plaintiff presses upon the court is sufficient to warrant the relief he seeks. Moreover, each of plaintiff's individual claims has been considered, and rejected, by courts heretofore. My discussion of them therefore will be summary.

■ Plaintiff's first claim is that he was deprived of his right to counsel as guaranteed to him by the Constitution or by the Administrative Procedure Act. 5 U.S.C. § 555. Plaintiff's claim, more narrowly cast, is that he is guaranteed the right to have his counsel do more than assist in the preparation for the investigative hearing; plaintiff contends that counsel must be permitted to participate fully in that hearing. In *Hagopian v. Knowlton,* 470 F.2d 201 (2d

---

4. ¶ IV(6) of the contract Cadet Cody signed upon entering the Academy states, in pertinent part:

With the commencement of the Second Class Academic Year, a First or Second Class cadet who resigns or is separated prior to completing the course of instruction, except for physical disqualification, unfitness, or unsuitability, will normally be transferred to the Reserve Component in an enlisted status and may be ordered to active duty for not less than two years (10 U.S.C. 4348(b) ).

Cir.1972), our Court of Appeals considered a similar challenge to an Academy separation recommendation. It concluded that "[t]he importance of informality in the proceeding militates against a requirement that the cadet be accorded the right to representation by counsel before the Academic Board." 470 F.2d at 211. More recently, the Court of Appeals for the Fourth Circuit has applied the *Hagopian* conclusion and limited the right to counsel in a situation where a midshipman was faced with separation from the Naval Academy as a consequence of his possession and use of marijuana. *Wimmer v. Lehman,* 705 F.2d 1402, (4th Cir.1983). Nothing before me renders those authorities distinguishable.

▆▆ Plaintiff's second claim is that certain evidence seized from another's car at this time of his arrest should have been excluded as the fruit of an unlawful search and seizure. Passing for the moment the question whether plaintiff even has standing to raise this claim, I conclude that that evidence was not wrongfully admitted. The exclusionary rule applicable in District Court criminal trials does not apply to a military investigative hearing. *Ekelund v. Secretary of Commerce,* 418 F.Supp. 102, 106 (E.D.N.Y.1976). The Academy does have its own rule which excludes the fruits of a *bad faith* search and seizure. USMA Reg. 1–10, ¶ h(3)(e). Plaintiff, however, does not contend that this regulation was violated in the investigative hearing.

▆ Plaintiff's third claim is that the sanction which has been recommended is a harsh and unjust punishment. That sanction is clearly set forth in 10 U.S.C. § 4348(b) and plaintiff, by contract, risked this when he entered the Academy. The court in *Wimmer v. Lehman, supra,* approved an analogous statute applicable to the United States Naval Academy.

▆ Finally, plaintiff claims that the I.O.'s conclusion was not supported by substantial evidence and that moreover the wrong evidentiary standard was applied. After reviewing the transcript to the investigative hearing I conclude that the I.O.'s

conclusion was supported by substantial evidence. Moreover, for the reasons set forth above, I reject plaintiff's contention that the criminal "beyond a reasonable doubt" evidentiary standard should be applied.

The defendant's motion for summary judgment is granted, and that of the plaintiff is denied. The complaint is dismissed.

So ordered.