**Steven PHILLIPS, Plaintiff,**

**v.**

**The UNITED STATES of America, Pogo West, Secretary of the Army, Lieutenant General, Howard D. Graves, United States Military Academy, Defendants.**

**No. CV–95–4392 (DRH).**

United States District Court,
E.D. New York.

Jan. 2, 1996.

Joseph C. Stroble, Sayville, New York, for plaintiff.

Zachary W. Carter, United States Attorney, Brooklyn, New York by Phillip Miller, Asst. U.S. Atty., Department of the Army, Office of the Judge Advocate General, Arlington, Virginia by Major Douglas K. Mickle, for defendants.

## ORDER

HURLEY, District Judge.

In the above-captioned action, Plaintiff Stephen Phillips ("Phillips") alleges that Defendants have violated his constitutional right to due process and his rights under the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.*, by suspending him from the United States Military Academy at West Point ("the Academy"). Currently before the Court is Plaintiff's motion, brought by Order to Show Cause, for an order reinstating Plaintiff to full academic status at the Academy, with privileges restored, pending final determination of the action. For the reasons stated below, Plaintiff's motion is denied.[1]

## BACKGROUND

Phillips was admitted as a cadet to the Academy in June, 1993. He attended the Academy regularly until October, 1995, when he was suspended from the Academy following an investigation of alleged Cadet Honor Code violations, to wit, it was alleged that Phillips lied in response to questions posed by a superior officer.[2] The conduct of the

---

1. In response to the instant motion, Defendants served and filed a Declaration of Captain Paul Cohen in Opposition, and Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction and In Support of Cross–Motion to Dismiss. Plaintiff subsequently submitted supplemental papers, styled as a "Supplemental Affirmation and Combined Memorandum of Law", in support of the instant motion, and, specifically, to supplement the allegations of Plaintiff's Complaint. Defendants, in turn, filed a Memorandum of Law in Further Opposition to Plaintiff's Motion for a Preliminary Injunction and in Further Support of Defendants' Motion to Dismiss. Plaintiff thereafter submitted a letter to the Court, stating his request that submissions in support of his motion for a preliminary injunction be considered as opposition papers to Defendants' cross-motion to dismiss.

The parties having completed their submissions, the Court notes that neither Defendants nor Plaintiff have complied with Local Rule 3(b) with regard to Defendants' purported Motion to Dismiss. *See* Local Civ.R. 3(b). For this reason, the Court declines to consider Defendants' purported Motion to Dismiss.

2. Phillips, a cadet squad leader, was questioned concerning his knowledge of and participation in

Academy in the Honor Code Investigation, and Phillips's suspension, form the factual bases of Phillips's Complaint.

Phillips, in his Verified Complaint, Order to Show Cause with supporting affirmations, and Supplemental Affirmation, alleges six causes of action against Defendants. Specifically, Phillips alleges that:

1) Defendants violated the Administrative Procedure Act ("APA") and denied him due process of law in failing to permit Phillips's counsel to participate in the *voir dire* of members of the Honor Board ("the Board") (*see* Suppl.Aff. at 1–4);

2) the Academy denied Phillips due process of law in that the Board failed to follow Board procedures by receiving "redundant" and "cumulative" opinion testimony which was prejudicial to Phillips (*see id.* at 5–6);

3) & 4) the Academy denied Phillips due process of law in that the Board "fail[ed] to follow and adhere to procedures designed to allow a *voir dire* that provides [P]laintiff with fair and impartial board members[.]" (*id.* at 6–8);

5) the finding of the Board was not supported by substantial evidence (*id.* at 9), and

6) the Academy violated the APA by the following "arbitrary and capricious acts":

i) substantial disregard of the findings and recommendations of the Board, (*id.* at 10);

ii) imposition of a sanction not commensurate with Phillips's infraction, labeled "minor" by Phillips, (*id.*);

iii) submission of Phillips's case to the Secretary of the Army in derogation the Army's "60 day rule," (*id.*), and

iv) failure to follow established procedures related to the *voir dire* of Board members and the admission of opinion testimony. (*Id.* at 11.)

Defendants, in opposition, argue that: 1) the failure to allow Phillips's counsel to participate in *voir dire* violates neither due process nor the APA (Defs.' Mem.Further Supp. at 5–12); 2) the Honor Investigative Hearing and Academy proceedings were conducted in accordance with Academy procedures (*id.* at 12–16); and 3) the record reflects that the findings of the Board were supported by substantial evidence. (*Id.* at 18–19.) Additionally, Defendants argue that Phillips has failed to exhaust his administrative remedies.[3] (*Id.* at 19–20.)

In reply to the Defendants' submissions[4] in opposition to Phillips's motion, Phillips elected to request that the Court consider his original and supplemental affirmations and memoranda in support of the instant motion. The matter being fully briefed, the Court proceeds with its factual and legal analysis.

A. *The Honor Committee Investigative Procedures and The Proceedings Below*

The Cadet Honor Code states that a cadet will not "lie, cheat or steal, nor tolerate those who do." (*See* USCC 15–1 at 2–1.) The Procedures to be followed when it is alleged that a cadet has violated the Honor Code, providing numerous stages of investigation and review, are outlined in USCC 15–1, chapter 2 ("the Procedures"). Those stages of review, and the corresponding proceedings in Phillips's case, are related below.

1. *Honor Code Investigation & Procedures*

A suspected Honor Code violation should be initially reported to a Company Honor

---

a cadet "spirit mission," in which several first-year cadets in his squad "pranked," according to Phillips, a fellow cadet.

3. Defendants proffer Phillips's failure to exhaust administrative remedies in support of their purported cross-motion to dismiss. Although the Court has declined to entertain Defendants' cross-motion, the issue of whether any levels of review remain open to Phillips is highly relevant to the disposition of Phillips's motion for a pre-

liminary injunction. *Guitard v. Secretary of the Navy,* 967 F.2d 737 (2d Cir.1992).

4. The submissions by Defendants included, *inter alia:* 1) the administrative record of the Academy proceedings ("the Record"); 2) United States Corps of Cadets Pamphlet 15–1, chapter 2 ("USCC 15–1"), which outlines the Academy's Honor Committee Investigative Procedures, and 3) the Declaration of Captain Paul Cohen ("Cohen Decl.") regarding the Academy proceedings.

Representative ("CHR"). (USCC 15–1 at 2–2.) CHRs are charged with the initial inquiry of the merits of an allegation, and must determine whether credible evidence exists to warrant a further investigation by an Investigative Team. (*Id.*) CHRs should 1) notify a suspected cadet that an investigation is underway, 2) inform the cadet of the nature of the allegation(s), and 3) inform the cadet that he or she has the right to remain silent and to consult with legal counsel. (*Id.*) A cadet may retain civilian counsel at his or her own expense, or military counsel from the Defense Counsel Branch, Office of the Staff Judge Advocate. (*Id.*) On or about July 26, 1995, Phillips was so notified of the allegations against him, of the investigation and of his rights. (*See* Cohen Decl. ¶ 7; Record at 273–74.)

The CHR, on completion of the initial inquiry, must submit a written report of findings and recommendations to the Regimental Honor Representative ("RHR"). (USCC 15–1 at 2–2.) The RHR, in turn, must review the case and determine whether it should be forwarded for further investigation by an Investigative Team. (*Id.* at 2–3; Cohen Decl. ¶ 9.) The CHR and RHR in Phillips's case each found that the matter should be forwarded for the appointment of an Investigative Team ("a Team"). (Record at 285–87.)

The Team is charged with performing a complete and impartial investigation, and with issuing a written recommendation, in order to assist the Commandant of Cadets in making a referral decision in the matter. (USCC 15–1 at 2–3.) A cadet who is the subject of a Team inquiry retains the right to remain silent and, further, has the right to submit written statements to the Team. (*Id.*) Phillips was so notified of these rights on or about August 8, 1995. (Record at 277–78; Cohen Decl. ¶ 12.) The Team investigating Phillips's case issued a recommendation that the case be forwarded to a full Honor Investigative Hearing ("HIH"). (Record at 284–85.)

After a recommendation is issued by an Investigative Team, the RHR must again evaluate the propriety of the investigation, (USCC 15–1 at 2–3), and recommend to the Vice Chairman for Investigations ("the VCI") whether the case should be forwarded to an HIH. (*Id.*) The VCI is further required to make an independent review of the case file, and should the VCI determine the case should be forwarded to an HIH, the VCI shall send the case file to the Staff Judge Advocate ("SJA") for legal review. (*Id.* at 2–3, 2–4.) In Phillips's case, these requirements were met; the SJA, after completion of his legal review, found that the file on the allegations against Phillips contained sufficient evidence to submit the matter to an HIH. (Record at 291–92; Cohen Decl. ¶ 20.) Additionally, the SJA recommended that the allegations against Phillips be separated into two allegations for clarity and that specific witnesses be called to testify. In compliance with the Procedures, the file was returned to the VCI for a final decision on whether an HIH should be convened; the VCI, in turn, recommended that the Commandant refer the allegations against Phillips to an HIH. (Record at 288; USCC 15–1 at 2–4.)

The Commandant of Cadets has the option of requiring further investigation, dismissing the matter, or convening an HIH. (USCC 15–1 at 2–4.) The Commandant referred the case to an HIH on August 14, 1995. (Record at 293.) The HIH is charged with taking evidence on the allegations against a cadet, determining whether the cadet did or did not commit the violation(s) alleged, and providing input to the Superintendent of cadets as to disposition of the case. (USCC 15–1 at 2–6 through 2–10). Phillips was notified on August 16, 1995 that an HIH would be convened on August 24, 1995. (Record at 294; Cohen Decl. ¶ 30.) The HIH notice detailed Phillips's rights under the Procedures, *i.e.,* to remain silent, to consult with legal counsel, to present evidence, to cross-examine adverse witnesses, and to challenge members of the HIH for cause. (Record at 294–96; *see* USCC 15–1, 2–10.)

2. *The Honor Investigative Hearing & Procedures*

At the first of two preliminary sessions, Phillips, again pursuant to the Procedures, was given the opportunity to raise any challenge to the Hearing Officer or make any

motions or requests regarding witnesses, the contents of the case file, or other pertinent matters. (Record at 33–38.) Phillips's civilian counsel, Daniel W. Shimek, and his Cadet Advisor were present at the first preliminary session. (*Id.*) At that session, Phillips stated that he was satisfied with his counsel's advice. (Record at 33; Cohen Decl. ¶ 33.) Phillips also objected to several exhibits to the Record; those objections were ruled upon by the then-presiding Hearing Officer. (Record at 33.)

At the second preliminary session, Phillips was present with his Cadet Advisor, Mr. Shimek, and Phillips' private counsel in the case pending before this Court, Edward L. Vaczy, Esq., and Joseph C. Stroble, Esq.. (Record at 39–41.) The Hearing was commenced on August 30, 1995. Phillips's Cadet Advisor and private legal counsel again were present. (*Id.* at 39)

After the Hearing Officer conducted *voir dire* examination of the Honor Board members who had heard the evidence, Phillips had the opportunity to discuss the *voir dire* and the chosen Honor Board members with counsel. (Record at 42.) When asked if he had any objections to the Honor Board members, Phillips replied that he did not. (*Id.* at 41–42.) Phillips made opening and closing statements, questioned and cross-examined witnesses, and submitted evidence on his own behalf. (*Id.* at 46–195.) Following deliberations, a majority of the Honor Board found one of the allegations against Phillips to be supported by substantial evidence, to wit, that Phillips had lied to his superior officer. (*Id.* at 304.)

After reaching their determination, each member of the Honor Board completed a Hearing Member Worksheet ("Worksheet"). (*See* Record at 307–33; USCC 15–1 at 2–15, 2–16.) Under the Procedures, the Superintendent of Cadets is required to review the Worksheets, which "provide the Superintendent with board member input toward disposition of a case where the cadet has been found to have violated the Honor Code." (USCC 15–1, 2–16.)

### B. *Post–Hearing Review*

After the Hearing, Phillips's case was sent for legal review to the Staff Judge Advocate, who in turn advised the Superintendent to review the file but withhold action until the Commandant recommended a course of action and Phillips submitted any additional materials. (Record at 19–22.) The Commandant of Cadets recommended to the Superintendent that Phillips be separated from the Academy with the opportunity to reapply for admission after 8–12 months of active duty. (Record at 11.) Phillips's counsel submitted two letters in his behalf. (Cohen Decl. ¶ 53.)

### C. *Action by the Superintendent*

The determination as to what sanction will be imposed on a cadet who has violated the Honor Code lies within the Superintendent's discretion. (USCC 15–1 at 2–16.) "*Although the normal sanction for a violation of the Honor Code is separation, the Superintendent may exercise discretion[.]*" (*Id.* (emphasis added)) Cadets who are separated from the Academy may, for example, be invited to reapply for admission after completion of approximately one year in active duty, during which year the cadet works with a mentor on a course of ethical development. (*Id.*) Following his review of the case file, the Commandant's recommendation, and a personal interview with Phillips, the Superintendent approved the findings of the HIH, forwarded the file to Headquarters, Department of the Army ("Headquarters"), and recommended that Phillips be separated from the Academy and be given an honorable discharge. (Record at 3.) The Superintendent also recommended that Phillips be given an opportunity to reapply to the Academy following eight (8) months of active duty. (*Id.*) Phillips was so notified of the Superintendent's decision by memorandum dated October 23, 1995. (Record at 4–5.)

On November 2, 1995, Plaintiff agreed to the Academy's offer to apply for readmission to the Academy according to the Superintendent's recommendation. (Cohen Decl. ¶ 61) The offer, and the Superintendent's recommendation, are currently under review by the Assistant Secretary of the Army for Man-

power and Reserve Affairs for a final decision. (*Id.; see* USCC 15–1 at 2–17.) At present, Phillips is suspended from the Academy. (*Id.* ¶ 62.) If the Assistant Secretary concurs with the recommendation of the Superintendent, Phillips will be separated from the Academy. (Cohen Decl. ¶ 67.) According to the Academy, Phillips's case will be reviewed by several offices of the Department of the Army before a final decision is made. (Cohen Decl. ¶ 65.) Additionally, according to representations by counsel at oral argument on the instant motion, review of Phillips's case is available from the Army Board for the Correction of Military Records pursuant to 10 U.S.C. § 1552. (Tr. Oct. 31, 1995 at 20.)

### C. The "60–day Rule"

The Academy operates under a "60–day rule," imposed by the Secretary of the Army, pursuant to which Cadet Honor cases must be processed within sixty (60). (USCC 15–1 at 2–18.) The sixty (60) days for the processing of Cadet Honor cases commence, under the rule, with the report of a violation to a CHR and conclude (if a violation is found) when the case is received by Headquarters. (*Id.*) Certain days are excluded in computing the sixty (60) days within which Headquarters is required to receive the case. (*See id.* at 2–19, 2–20). According to Defendants, the Superintendent's recommendation as to Phillips's case was sent by overnight mail on October 23, 1995, that is, on the fifty-ninth (59th) countable day from the report to the CHR. (Cohen Decl. at ¶ 69.) Due to difficulties beyond Defendants' control, however, Headquarters did not receive the recommendation until October 26, 1995, that is, on the sixty-second (62nd) day. (*Id.*) The Procedures are silent as to cases in which Headquarters receives the Superintendent's recommendation past the sixtieth (60th) day.

### DISCUSSION

Although Defendants have asserted the exhaustion doctrine in support of their purported motion to dismiss, this Court finds the application of the exhaustion doctrine dispositive of the instant motion by Phillips for injunctive relief and, accordingly, begins its discussion with that issue.

### A. Exhaustion of Administrative Remedies

 "Under the exhaustion rule, a party may not seek federal judicial review of an adverse determination until the party has first sought all possible relief within the agency itself." *Guitard v. Secretary of the Navy,* 967 F.2d 737, 740 (2d Cir.1992) (citing *Myers v. Bethlehem Shipbuilding Corp.* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–464, 82 L.Ed. 638 (1938)). The exhaustion rule applies with equal if not greater force to Academy administrative proceedings, an area within the peculiar province of the military. *See Cody v. Scott,* 565 F.Supp. 1031, 1034 (S.D.N.Y.1983) (citing *Kolesa v. Lehman,* 534 F.Supp. 590 (N.D.N.Y.1982)).

In *Guitard,* the plaintiff, a lieutenant in the Navy Nurse Corps, refused to take a drug test and his refusal was noted in his record. *Guitard,* 967 F.2d at 738. Subsequent to his refusal to take a drug test, he tested positive for marijuana use in a random drug test sweep. *Id.* Following a court-martial, Guitard was ordered discharged. *Id.* Guitard's court-martial conviction was overturned by the Navy and Marine Corps Court of Military Review, *id.,* but a subsequently-convened Board of Inquiry found him guilty of drug-related misconduct and recommended his discharge. *Id.* at 739. The Secretary of the Navy approved the recommendation and ordered Guitard's discharge. *Id.* Before appealing to either the Board for the Correction of Naval Records or to the Naval Discharge Review Board, Guitard sought and obtained a temporary restraining order from the district court. *Id.* The district court, on the grounds that there were sufficient issues regarding the propriety of the Board of Inquiry proceedings, ordered the Navy to conduct further hearings which culminated in a report which again recommended Guitard's discharge. *Id.* Dissatisfied with the Navy's response, the district court issued a second temporary restraining order, from which the Navy appealed.

The Second Circuit reversed, stating that "[b]ecause Guitard failed to exhaust his administrative remedies, the district court

should not have intervened in the proceedings between Guitard and the Navy." *Id.* at 740. Further, "[t]he imperatives concerning military discipline require the strict application of the exhaustion doctrine in military cases." *Id.* District courts in this Circuit have applied the exhaustion doctrine to cases involving administrative proceedings at West Point and other military service academies. For example, in *Cody v. Scott,* 565 F.Supp. 1031 (S.D.N.Y.1983), a West Point cadet sought an order staying his separation from the Academy following disciplinary proceedings in which he was found guilty of drug use. 565 F.Supp. at 1031. As in the case at bar, the cadet in *Cody* brought an action in the district court prior to the Secretary of the Army's review of the case, and prior to seeking relief pursuant to the Army Board of Correction of Military Records. *Id.* at 1033. Finding that "[p]laintiff has not advanced adequate justification to short-cut the normal administrative procedure[,]" the district court found the action barred by the administrative exhaustion doctrine. *Id.*

Similarly, in *Kolesa v. Lehman,* 534 F.Supp. 590 (N.D.N.Y.1982), the plaintiff, a scholarship student in the Navy Reserve Officers Training Corps ("NROTC") was disenrolled from NROTC and ordered to commence active duty following a hearing before a Review Board that he had used illicit drugs and had shown only marginal military performance in the NROTC program. 534 F.Supp. at 591. In lieu of appealing to the Board of Correction of Naval Records ("BCNR"), the plaintiff brought an action in the district court to restrain the Secretary from ordering the plaintiff to active duty. *Id.* Finding that the notice provided to the plaintiff failed to appraise him of all of the matters that would be considered by the Board of Review, and thus raised constitutional concerns, the district court nevertheless declined to issue a preliminary injunction, opining that "an airing of plaintiff's claims in a BCNR will cure any constitutional deficiencies that may have attended his Board of Review hearing[.]" *Id.*

at 595. The parties in *Kolesa* having consented to the continuation of a temporary restraining order pending entry of final judgment, the district court retained jurisdiction but refrained from decision on the substance of the plaintiff's claims pending completion of the administrative review process. *Id.*

■ The record submitted to this Court warrants a similar restraint. To date, Phillips's case has proceeded through the seemingly exhaustive investigative and review procedures established by the Academy. *See supra* at 103–106. Phillips has, however, attempted to "short-cut" the normal administrative process by bringing an action in this Court before a final decision by the Department of the Army and before seeking redress from the Army Board for the Correction of Military Records. Case law in this Circuit clearly holds that in military disciplinary and honor code proceedings, courts must await the exhaustion of the administrative process. *See Guitard,* 967 F.2d at 740; *Kolesa,* 534 F.Supp. at 595; *Cody,* 565 F.Supp. at 1034.

As to matters raised by Phillips in this Court regarding procedural irregularities, *e.g.,* the impartiality and propriety of the Honor Board proceedings and admission of opinion testimony—stages in the administrative review process remain in which such alleged procedural irregularities may be addressed.[5] This is especially true as to the asserted violation of the "60–day rule," which is imposed by the Secretary of the Army on the Academy. (*See* USCC 15–1, 2–18 through 2–20.)

Because the decision to separate Phillips from the Academy is not final, and because he has not exhausted the available avenues of administrative review, this Court declines to intervene in the proceedings between Phillips and the Department of the Army, and the instant motion is denied.

B. *Phillips's Allegations as to Due Process and Administrative Procedure Act Violations*

Notwithstanding that the Court disposes of the instant motion on the aforementioned

---

**5.** Defendants assert that Phillips's objections on these matters have been waived because they were not raised during Academy proceedings. Phillips does not controvert these assertions. The Court notes that Phillips, at the first preliminary HIH session was notified that objections to the composition of the Honor Board, evidentiary issues and "any [other] matter [a cadet] feels would be unfair to him" may be waived if not asserted at the time of HIH. (Record at 33).

ground, the Court notes that a review of applicable case law and of the record before the Court strongly suggest that Phillips has not made the necessary showing for a preliminary injunction. In short, the record before the Court does not indicate a likelihood of success on the merits of the claims that the Academy has violated Phillips's rights to due process and under the Administrative Procedure Act.

■■■ "The general standard for issuing a preliminary injunction is well-settled. 'The party seeking the injunction must demonstrate (1) irreparable harm should the injunction not be granted, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief.' " *Able v. United States,* 44 F.3d 128, 130 (2d Cir.1995) (citing *Resolution Trust Corp. v. Elman,* 949 F.2d 624, 626 (2d Cir.1991)). However, "as long as the action to be enjoined is taken pursuant to a statutory or regulatory scheme . . . government action with respect to [a] litigant requires application of the 'likelihood of success' standard." *Able,* 44 F.3d at 131. Moreover, a preliminary injunction is an extraordinary remedy not to be routinely granted. *Medical Soc'y v. Toia,* 560 F.2d 535 (2d Cir.1977).

■■■ Undoubtedly, Phillips is entitled to full due process protection in the underlying proceedings which may, or may not, in the final analysis, culminate in his separation from the Academy. *See Tully v. Orr,* 608 F.Supp. 1222, 1226 (E.D.N.Y.1985); *Cody v. Scott,* 565 F.Supp. at 1034; *Lightsey v. King,* 567 F.Supp. 645, 648 (E.D.N.Y.1983). Due process is a flexible concept, however, and in this Circuit the standard is clear: in military separation proceedings such as Phillips's, an individual must be given a full and fair hearing. *Wasson v. Trowbridge,* 382 F.2d 807 (2d Cir.1967).

The individual must receive notice of the charges against him and a fair opportunity to present a defense. He should be given the opportunity to appear, and to present statements, evidence and witnesses on his behalf. With respect to counsel, the Court in *Wasson* reasoned that counsel is not

ordinarily required where the proceeding is noncriminal in nature; where the proceeding is essentially investigative and the government does not proceed with counsel, and where the individual concerned is sufficiently mature and educated to develop the facts adequately.

*Kolesa v. Lehman,* 534 F.Supp. at 593–94; *see Hagopian v. Knowlton,* 470 F.2d 201 (2d Cir.1972) (hearing and opportunity to present evidence, witnesses and testimony required when the separation of a cadet is envisioned, but representation by counsel not required), *questioned on other grounds, Phillips v. Marsh,* 687 F.2d 620, 624 (2d Cir.1982) (Winters, J., concurring).

■■■ Additionally, as with any other agency, actions by the Academy, other than those committed to agency discretion by law, are subject to the requirements of the Administrative Procedure Act, 5 U.S.C. §§ 551, *et seq.. See Ornato v. Hoffman,* 546 F.2d 10, 14 (2d Cir.1976). However, the APA requires only that the Academy, as any other agency, follow its own procedures. *Id.; Smith v. Resor,* 406 F.2d 141 (2d Cir.1969). "When regulations prescribe specific steps to be taken to insure due process they must be substantially observed." *Friedberg v. Resor,* 453 F.2d 935, 938 (2d Cir.1971). Thus, due process requires that the Academy afford cadets, such as Phillips certain procedural protections, *see supra* at 108, in separation proceedings; the APA requires that the Academy act in accordance with the procedures it has imposed upon itself in ensuring due process requirements are met. *See Lightsey v. King,* 567 F.Supp. at 649–50 (where Merchant Marine Academy ("MMA") procedures provided for an Honor Board hearing to determine the veracity of honor code allegations, the MMA could not disregard the findings of that board).

The Court notes that although Phillips's claims are replete with allegations that the Academy failed to follow its own procedures, *(see e.g.,* Suppl.Aff. at 4, 5, 6, 10–11), and allegations that the Academy breached certain "customs" and "norms" *(see* Suppl.Aff. at 9), in imposing a sanction in Phillips's case, and further, that the Academy actions were "arbitrary and capricious," *(see id.* at 105–

106), the Court has been provided by Phillips with no factual support on which to reach such a conclusion. On the other hand, Academy regulations and the Administrative record, submitted in opposition to the instant motion by Phillips, strongly suggest that the Academy has abided by its own, self-imposed procedures regarding the investigation and processing of Honor Code violations. *See supra* at 103–106.

The administrative record indicates that the Academy regulations, which appear to have been scrupulously observed, provided ample notice to Phillips of the accusations against him, a full and fair hearing in which he could object to Board members and evidence, cross-examine adverse witnesses, and present witnesses in his own behalf—with the assistance of counsel with whom he could consult. *See supra* at 104–106. Further, Phillips had the opportunity to submit statements at different stages of the proceedings, *i.e.,* to the Investigative Team, *see supra* at 104, and to the Superintendent, *see supra* at 106, before a decision was made by the Superintendent to recommend separation. It would appear, on the basis of the record currently before the Court, that Academy procedures complied with due process, and further, that this is a case in which the Academy substantially complied with its own procedures. Accordingly, the likelihood of success on the merits of Phillips's claims appear, at this juncture, slim at best.

Despite the foregoing discussion of the merits of Phillips's claims, the Court reiterates that Phillips's motion for a preliminary injunction is denied because Phillips has not exhausted his administrative remedies and administrative avenues of relief remain open.

## CONCLUSION

For the foregoing reasons, Plaintiff Steven Phillips's motion for an order reinstating him to full academic status at the United States Military Academy at West Point is DENIED.

SO ORDERED.