Eric McLAUGHLIN, Plaintiff,

v.

MASSACHUSETTS MARITIME ACADEMY, Defendant.

Civ. A. No. 83–1120–MC.

United States District Court,
D. Massachusetts.

June 16, 1983.

Daniel M. Blackmon, Buzzards Bay, Mass., for plaintiff.

Elliot Lobel, Boston, Mass., for defendant.

## STATEMENT OF REASONS FOR ISSUANCE OF PRELIMINARY INJUNCTION

McNAUGHT, District Judge.

This action came on to be heard on the plaintiff's motion for a preliminary injunction. The motion is granted. The plaintiff, a cadet at the Massachusetts Maritime Academy, the defendant, seeks to enjoin the defendant from dismissing him from the Academy for nonacademic violations, including alleged falsehood and two incidents involving controlled substances.

He was placed on report. Charge 1, the unauthorized possession of drugs, contained two specifications. It was alleged that on February 15, 1983, he possessed amphetamines and hashish when apprehended by New Orleans police, and that on February 26, 1983, he had hashish and approximately 29 capsules of amphetamines in his tool box aboard the Training Vessel STATE OF MAINE. Charge 2 specified that on the 25th of February, 1983, aboard the Training Vessel, he made a false statement to a deck duty officer. These deficiencies were classified as Class I offenses.

On March 29, 1983, a hearing into the incidents was conducted by the Academy's Disciplinary Board. Faculty counsel was present to advise him at this first hearing. Evidence was taken, and the cadet himself made a statement. The Board found that he had not conducted himself in a manner reflecting highest standards of honesty, integrity and maturity, and recommended that he be dismissed from the Academy.

A second meeting of the Board was scheduled for further examination of the case. The cadet was notified and was told of his right to staff counsel. He was given materials "newly acquired" by the Board. [Affid. Paul A. Smith, Jr., Capt., ¶ 14].

It should be noted that Eric McLaughlin (Arrest Register, Department of Police, New Orleans, La., dated February 15, 1983, appended to affidavit of Paul A. Smith, Jr.) was arrested by the New Orleans police charged with possession of hashish, possession of amphetamines, and resisting arrest. On February 17, 1983, bail in the amount of $2,500 was set by the judge of the Criminal District Court for the Parish of Orleans. There is no indication of further activity in the state of Louisiana, and the court concludes that the criminal charges are still pending there.

At the second hearing, held on April 19, 1983, plaintiff was present, but without faculty counsel. Plaintiff says, by affidavit, that between April 15 and 19, he tried on four occasions to notify the Captain that his advisor could not make the hearing. He says that he was "told the Board would proceed despite the fact that (he) had no advisor." [Affidavit, McLaughlin, ¶ 7]. The Board, according to Captain Smith [Affidavit, Smith, ¶ 16] "questioned the veracity of his explanations", and offered to appoint another counsel to advise. "He declined the offer." The hearing was held. Testimony was taken. The cadet cross-examined witnesses.

Ultimately the Board recommended again that plaintiff be dismissed from the Academy. This decision was accepted and reaffirmed by the President of the Academy on April 25, 1983.

He then brought this complaint under 42 U.S.C. § 1983, alleging a deprivation of procedural due process, "rights, privileges and immunities secured by the laws and Constitution of the United States." He complains of the insufficiency of the evidence to support the charges at the hearings, the failure of the Board to make a "report of findings" to the President of the Academy, the refusal to be "allowed legal counsel at either hearing." It is a fact that he was not granted permission to have civilian counsel present. He also complains of the denial of the assistance of a faculty advisor at the second meeting.

The "Regulations and Standards for the Regiment of Cadets of the Massachusetts

Maritime Academy", Article 100.11, c. (3), (4), (5), (6) are cited by plaintiff [Exhibit B to Memo of Law in Support of Motion] as the source of his rights. The Academy was established following agreement entered into by this Commonwealth with the United States Department of Commerce to promote the policy of the United States Merchant Marine (Sec. 101, Merchant Marine Act of 1936). As a condition of the Agreement, the Academy stipulated that it would comply with regulations and minimum standards in the Maritime Administration General Order No. 87. Section 310.10, paragraph (b) of the General Order provides that, "(s)erious or excessive violations ... by a Cadet may ... warrant his dismissal by the school...."

Article 100.11 (referred to above) provides that a cadet charged with a Class I Offense "shall be free to select as counsel any officer on the Academy Staff willing to so serve. In the event that the cadet is *unwilling*, or unable, to obtain such counsel, the President shall appoint an officer to serve in such capacity." It goes on to provide that such counsel is an *advisor*, not an advocate. It is the cadet who presents his or her position.

As I understand the argument of plaintiff's counsel, on the hearing of this motion, the court's attention is directed emphatically to two factors which bolster the contention that the cadet was denied due process: (1) the refusal of the defendant to allow plaintiff to have legal counsel at the Board hearings; (2) the failure of the defendant to allow the cadet to have staff counsel at the second hearing. I note once again the existence of the arrest record from the City of New Orleans, Louisiana, and the bail which was set by the judge of the Criminal District Court. There is a pending criminal case against the plaintiff cadet in Orleans Parish, Louisiana. Quoting defendant's counsel at the hearing on the motion for the preliminary injunction, "I recently learned that the police report which was introduced addressing one of the two drug charges has now turned itself into an official criminal proceeding in New Orleans and I can Xerox the notice that we have of that."

I turn, then, to the criteria of entitlement to a preliminary injunction:

"In the First Circuit, a plaintiff must satisfy four criteria in order to be entitled to a preliminary injunction. The Court must find: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction." *Women's Community Health Ctr. Inc. v. Cohen,* 477 F.Supp. 542, 544 (D.Me.1979) (citations omitted). *LeBeau v. Spirito,* 703 F.2d 639 (1st Cir. 1983); *Planned Parenthood League of Massachusetts v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981).

Should injunctive relief be denied here, the plaintiff would suffer irreparable injury. As the attorney for the plaintiff argued, "The total exclusion from the educational process for more than a trivial period is a serious event, and as to a Cadet from the Massachusetts Maritime Academy, it would most probably signal the end of any career in the Merchant Marine." The plaintiff's career may well be at stake at a point where he is very close to graduation. Should expulsion occur, that harm would far outweigh the injury which would be inflicted on the defendant by granting injunctive relief. Allowance of the motion for preliminary injunction would prevent dismissal of the plaintiff unless another hearing were granted to the cadet with those safeguards deemed essential to the court's conception of the requirements of due process (representation by an Academy staff advisor and by a civilian attorney, both of whom would participate simply as advisors).

The plaintiff has exhibited a likelihood of success on the merits; that is, in the opinion of the court, he will prevail in his contention that he cannot be expelled without adequate procedural due process, and that

such due process has not been accorded to him to the present time.

On the one hand, there is no question that the plaintiff was given notice of both hearings; that he was afforded the opportunity to have discovery and to prepare for those hearings; that at those hearings he conducted what examination he wished of the witnesses; that he personally had an opportunity to be heard; that staff counsel was assigned to him for both hearings, and that staff counsel appeared with him on the first occasion. On the other hand, when the second hearing took place, he did not have the benefit of a staff advisor, and at neither hearing did he have the benefit of a private attorney.

If he were refused the right to be represented by a staff advisor, there was a violation of Article 100.11(c)(3). The last sentence requires that the President appoint an officer to serve as counsel even if the cadet is *unwilling* to obtain such. The purpose of this sentence seems clear to the court. Captain Smith [Affidavit, Smith, ¶ 16] swears that he offered to appoint another staff counsel, and that McLaughlin declined the offer. "We proceeded to hold the hearing." Assuming the verity of this recital of the facts (the cadet claims otherwise), there still appears to be a denial of a right to staff counsel created by the rules, regulations and standards. One might well argue, therefore, that the complaint states a claim for deprivation of state-created entitlement, thereby implicating due process concerns. The decision to grant the request for injunctive relief, however, does not rest upon this ground alone.

Assuming that the right to staff counsel is not an interest secured by the Due Process Clause, for the sake of argument, we have a set of facts here somewhat similar to those presented in *Gabrilowitz v. Newman*, 582 F.2d 100 (1st Cir.1978). *Gabrilowitz* dealt with a situation in which a state university student was denied assistance of counsel at a student disciplinary hearing. There, as in the case at bar, criminal and civil proceedings arose out of the same facts. A rule defining the rights of the student at the hearing prohibited the assistance or presence of legal counsel. Upon application, the district court granted an injunction under 42 U.S.C. § 1983, and was upheld by the Court of Appeals. "The issue is whether he is unconstitutionally deprived of due process of law because he is forced to make that choice (whether or not to testify in a disciplinary proceeding), or other choices, without the benefit of a lawyer in the face of a pending criminal case arising from the same facts that triggered the disciplinary proceeding." *Gabrilowitz, supra*, 582 F.2d at 104. After setting forth the traditional due process balancing test as delineated in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Court of Appeals went on to say, at page 105: "All that appellee asks is that he be allowed the advice of counsel when he throws his college degree into the balance against a possible loss of liberty," and, at page 106, "Academic institutions have a significant interest in the promulgation of procedures for the resolution of student disciplinary problems (citations omitted). The limited role of counsel that we are considering, however, would not be very intrusive. Counsel would be present only to safeguard appellee's rights at the criminal proceeding, not to affect the outcome of the disciplinary hearing.... Counsel should, however, be available to consult with appellee at all stages of the hearing, especially while appellee is being questioned." The *Gabrilowitz* decision requires a holding here that the plaintiff will probably succeed in his claim that the disciplinary proceeding as it has been held to date, without plaintiff having the right to a lawyer of his own choice with whom to consult and advise, deprived plaintiff of due process of law.

The public interest will not be affected adversely by the grant of injunctive relief. I am not unmindful of the fact that the Academy is an institution designed to provide quasi-military training along with its academic program; it has a disciplinary code designed to foster leadership, discipline and respect for authority. The argument of defendant that to allow the motion for an injunction would undermine the high

level of discipline demanded of cadets is, in my opinion, outweighed by the necessity that expulsion proceedings, at least in those instances in which they arise out of the same facts involved in criminal proceedings against the cadet, comport with the requirements of the Due Process Clause.