**In the Matter of the Application of Francis A. CROWLEY, Plaintiff,**

**v.**

**UNITED STATES MERCHANT MARINE ACADEMY and Rear Admiral Thomas T. Matteson, Superintendent, Defendants.**

No. 97–CV–6547 (ADS).

United States District Court, E.D. New York.

Nov. 15, 1997.

Canfield, Venusti, Madden & Rossi by Thomas J. Rossi, Douglas, NY, for Plaintiff.

Zachary Carter, United States Attorney for the Eastern District of New York by Assistant United States Attorney, Vincent Lipari, Brooklyn, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Before the Court on Monday, November 10, 1997 at 5:00 p.m., was the motion of the plaintiff, Francis A. Crowley, a midshipman attending the United States Merchant Marin Academy, for an Order to Show Cause and a stay of the disciplinary hearing of the Executive Board of the Academy, scheduled to commence on Wednesday, November 12, 1997, to determine misconduct charges which may result in Crowley's dismissal.

## I. BACKGROUND

The Second Circuit has described the defendant Merchant Marine Academy (the "Academy"), located at Kings Point, New York, as:

[T]he instrumentality of the federal government charged with the responsibility of training the officers of the United States Merchant Marine. Although the primary responsibility of the merchant marine is the transport of water-borne commerce, in times of need it acts as an auxiliary to the United States Navy and on graduation, a Cadet may receive a Reserve Commission in the Navy. Indeed, because of the vital national interest served by the merchant marine and the hazards which are commonly encountered, it accurately may be

said that the responsibilities of merchant marine personnel are comparable to those of the Navy and Coast Guard. Chief Justice Maltbie once observed that the successful prosecution of (the Second World War) would hardly have been possible without the transportation facilities afforded by merchant vessels operating under the war shipping administration and that the persons who served in those vessels were subject to most serious danger of injury or loss of life from risks directly inherent in armed conflict at sea and on the shore (*Walsh v. Jenks*, 135 Conn. 210, 62 A.2d 773 [1948] ). The Regulations of the Academy themselves recite the basis for the prerequisite that Cadets conduct their affairs with a military bearing: The standards of discipline required by Academy Regulations must necessarily be high, since offenses which might be condoned in other walks of life cannot be tolerated aboard ships of the Merchant Marine or Navy where sins of omission or commission might cost human lives or millions of dollars worth of property. The Merchant Marine is run entirely by the discipline of the officers, by their standards, so their ships are run, and good discipline among all officers is paramount.

*Wasson v. Trowbridge, Secretary of Commerce, and the United States Merchant Marine Academy, et al.*, 382 F.2d 807, 809 (2d Cir.1967).

Francis A. Crowley ("Crowley" or "the plaintiff") is a midshipman in his fourth and final year at the Academy. On or about September 29, 1997, a fellow classmate—a female midshipman—accused Crowley of sexual misconduct. These allegations led the Nassau County Police to arrest Crowley and charge him with the offense of Aggravated Sexual Abuse in the Third Degree (New York Penal Law § 130.66), a class D felony. According to Crowley, the Nassau County District Attorney's Office will shortly present evidence of these charges to a grand jury panel, and an indictment likely will be handed down in the near future.

On November 4, 1997, the Academy advised Crowley that it was convening an Executive Board of the Academy ("the Board"),

on November 12, 1997, to hear evidence the female midshipman's allegations. The parties agree that if the Board finds Crowley guilty of these charges, the Academy will "disenroll," or dismiss, him.

## II. THE PARTIES' POSITIONS

Crowley presents the Court with two arguments in support of his motion to stay the Academy hearing pending the outcome of the state criminal prosecution. First, he contends that Section 806 of the Academy's "Administrative Procedures for Operating the Disciplinary System" ("the Rules")(Attached as Ex. B to the Plaintiff's Order to Show Cause) requires that Crowley submit a written response to the charges and contest them in the form of "statement" at the hearing, or else The Board will interpret his silence as an admission of the charges. Section 806 of the Rules provides the following:

806. *Disciplinary Statements:* A Midshipman may submit a written statement on any report of a violation of the standards of conduct. It is desired that any mitigating or extenuating circumstances, error in the report, or other matters which might be favorable to the reported Midshipman be set forth in the statement. *Lack of a statement regarding a conduct report constitutes agreement that the report is correctly stated and that there are no mitigating or extenuating circumstances.*

a. *Preparation:* Statements will be typed only on form KP1–60 (Disciplinary Statement). When needed, extra plain white sheets will be used to provide extra space

b. *Contents:* Statements will consist of a straight forward account of the facts relating to the offense. *Group statements will not be submitted.* Statements will not be the medium of counter charges. It should not contain irrelevant or improper material (such as the use of slang or gross comments). If the statement places the blame on another Midshipman, that Midshipman must be named. Any statement submitted that does not adhere to the above

will be an additional report offense with the charge "Failure to Comply with General Instructions with Minor Effect" and a recommended award of 10 demerits.

(The Rules, § 806)(emphasis supplied).

Relying on Section 806 of the Rules, Crowley argues that to defend himself at the Academy hearing he must make a "statement" or risk having his silence be deemed an admission of guilt. Crowley notes that any "statement" he makes in the Academy hearing may be used against him in the pending state criminal proceeding. The plaintiff asserts that this places him in an untenable "Catch–22" position: he must either make a statement at the Academy hearing, which can be used against him in the criminal prosecution, or refuse to submit a statement at the hearing, and have the Board infer from his silence that he admits the charges. The latter situation, as previously noted, will result in the plaintiff's dismissal from the Academy. According to Crowley, this dilemma constitutes an impermissible infringement of his Fifth Amendment right against self-incrimination. Crowley urges this Court to stay the hearing until the criminal case is resolved so that he can avoid this predicament.

Crowley's second argument in favor of a stay is that he will not have the full benefit of an Academy advisor if the hearing is held prior to resolution of the criminal prosecution. The parties agree that the Rules permit Crowley to consult with legal counsel prior to the hearing, but that counsel may not attend the hearing itself. Under the Rules, Crowley must select an Academy faculty or staff member to advise and assist him at the hearing. If he does not select an advisor, the Board will designate one for him. (The Rules, § 803[i] ). Crowley asserts that since no attorney-client privilege will attach to his communications with the advisor, anything he says could be used against him in the state criminal prosecution. Thus, Crowley claims, he will be unable to speak freely, rendering his "right" to the assistance and consultation of an advisor meaningless.

In opposing Crowley's self-incrimination claim, the Government, citing Sections 803

804(c) and 805(c)(1) of the Rules, argues that the Academy's procedures for handling Class I Violations, unlike those relating to the less serious Class II and III Violations, do not mandate a "statement" from the charged midshipman. In addition, defense counsel advised the Court during oral argument that the Academy plans to honor its longstanding practice not to require a midshipman accused of a Class I Violation, the most serious type of offense, to make a statement during his disciplinary hearing, and not to infer from his silence that the charges are admitted. The Government challenges the plaintiff's complaints regarding the Academy advisor by pointing to the many courts which have held that there is no formal right to the participation of counsel at military academy disciplinary hearings. The Government contends that the plaintiff is entitled only to an Academy Advisor, which the defendants have provided for Crowley. *See, e.g., Wasson v. Trowbridge*, 382 F.2d at 810, 812 (finding that "due process does not require representation by counsel" at Merchant Marine Military Academy disciplinary hearing).

## III. THE SELF–INCRIMINATION ISSUE

 Crowley maintains that the disciplinary hearing should be stayed because he faces a difficult choice which constitutes a violation of his Fifth Amendment right against self-incrimination: he must either make a statement at the hearing, which will be used against him in the parallel criminal prosecution, or refuse to submit a statement, resulting in the Board inferring from his silence that he admits the charges and dismissing him.

This argument was raised in *Midshipman Wimmer v. Lehman, Secretary of the Navy*, 705 F.2d 1402, 1404–05 (4th Cir.1983), *cert. denied*, 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 681 (1983), where the Fourth Circuit reasoned that:

[D]ifficult choices are imposed upon defendants and litigants in many situations. See, e.g., *McGautha v. California*, 402 U.S. 183, 213–20, 91 S.Ct. 1454, 1470–74, 28 L.Ed.2d 711 (1971), *vacated on other grounds*, 408 U.S. 941, 92 S.Ct. 2873, 33

L.Ed.2d 765; *United States v. White*, 589 F.2d 1283, 1286–87 (5 Cir., 1979); *Arthurs v. Stern*, 560 F.2d 477 (1 Cir., 1977). Even if the overhanging threat of the criminal trial created some hard choices for [the cadet] at the hearing, the [Academy's] strong interest in concluding its proceedings preclude delay due to [the cadet's] state case. Provided it *respected his Fifth Amendment rights, which it more than fully did, both by drawing no inferences, and by permitting the limited presence of counsel, Gabrilowitz v. Newman*, 582 F.2d 100 (1 Cir., 1978), it owed him no duty to subordinate its general interests.

*Id.* at 1407(emphasis added).

Crowley's arguments do not convince the Court that a stay is warranted, primarily because the Court determines that his right against self-incrimination will be honored during the hearing. Significantly, the defendants' counsel stated to the Court during oral argument that the Academy has a well-established policy not to require a midshipman accused of a Class I Violation, the most serious type of offense, to make a statement during his disciplinary hearing, and not to infer from his silence that the charges are admitted. Defense counsel assured the Court that the Academy would adhere to its customary practice in this case.

Nevertheless, Crowley contends that defense counsel's representations are not credible, because they are contradicted by Section 806 of the Rules, which provides that "midshipman may submit a written statement *on any report of a violation of the standards of conduct,*" and that the "lack of a statement ... constitutes agreement" with the report (§ 806)(emphasis added). According to Crowley, the "any report" language necessarily includes reports of Class I Violations.

Crowley's reasoning is unpersuasive for several reasons. First, the Court accepts the representations of defense counsel, an officer of the Court, that Crowley will not be required to make a statement at the hearing, and that the Board will not consider his silence in determining his guilt. Crowley may be assured that the Academy will adhere to this pledge by presenting a transcript of these proceedings at the hearing. In the

unlikely event the defendants violate their promise and their long-standing policy, the plaintiff may turn to this Court for immediate relief.

Second, Section 806 must be reviewed in the context of the entire Rules, not isolation. The Rules for handling Class I, II and III Violations each contain a provision entitled *"The charged Midshipman,"* setting forth the accused cadet's responsibilities. (§ 803[i][Class I Violations], 804[c][Class II Violations] and 805[c][1][Class III Violations]). The Rules regarding Class II and III Violations mandate that "the charged midshipman will ... indicat[e] whether or not he/she wishes to make a statement. An indication of no statement will be acceptance of the charge as preferred to be correct and that no extenuating or mitigating circumstances exist." (The Rules, §§ 804[c] and 805[c][1]). By contrast, the Procedures for Handling Class I Violations contain no such provision. (The Rules, § 803). In the Court's view, it is reasonable to deduce from the absence of such a provision that midshipman accused of a Class I Violation is not required to make a statement, and that his silence will not be interpreted as an admission.

Third, even if Section 806 were to apply to Class I violations—despite the defendants' promise that it does not and the absence of any reference to "statements" in the Rules relating to Class I Violations—the Court finds that the language of Section 806 is ambiguous with regard to the nature of the "statement" that a charged midshipman must submit to avoid having the Board draw an adverse inference. The plaintiff would construe Section 806 as imposing a requirement that the midshipman's "statement" take the form of a rebuttal of the charges. The Court disagrees, noting that nothing in Section 806 prohibits an accused midshipman from submitting a "statement" invoking his Fifth Amendment privilege against self-incrimination.

In deciding not to stay the disciplinary hearing, the Court is sensitive to the Academy's institutional mission of providing quasi-military training along with its academic program. "It has a disciplinary code designed to foster leadership, discipline and respect for authority." *McLaughlin v. Massachusetts Maritime Academy,* 564 F.Supp. 809, 812–13 (D.Mass.1983). "Few decisions properly rest so exclusively within the discretion of the appropriate government officials than the selection, training, discipline and dismissal of the future officers of the military and Merchant Marine. Instilling and maintaining discipline and morale in these young [cadets] who will be required to bear weighty responsibility in the face of adversity—at times extreme—is a matter of substantial national importance scarcely within the competence of the judiciary." *Andrews v. Lt. General Knowlton,* 509 F.2d 898, 904 (2d Cir.1975). To stay the hearing pending the trial of the criminal charges would undermine the Academy's interests in maintaining its strict standards, especially since the criminal case may not be finally resolved until several years from now, at which point Crowley, now a fourth-year cadet, will no longer be attending the Academy. In addition, if the charges are true, it would be unconscionable to compel the Academy to suffer indefinitely the presence of a midshipman who threatens the safety of other cadets.

In view of the foregoing, there is no reason to stay the hearing on the basis of Crowley's self-incrimination objections.

## IV. THE RIGHT TO COUNSEL, AND PRIVILEGED COMMUNICATIONS AND DUE PROCESS

Crowley concedes that an accused cadet does not have a constitutional right to the active participation of counsel at the disciplinary hearings. *See Cody v. Lt. General Scott Superintendent of the United States Military Academy at West Point,* 565 F.Supp. 1031 (S.D.N.Y.1983)("Plaintiff's claim, more narrowly cast, is that he is guaranteed the right to have his counsel do more than assist in the preparation for the investigative hearing; plaintiff contends that counsel must be permitted to participate fully in that hearing.... However, the importance of informality in the proceeding militates against a requirement that the cadet be accorded the right to representation by counsel before the Academic Board.")(citing *Hagopi-*

*an v. Knowlton,* 470 F.2d 201 [2d Cir.1972]). In fact, he does not even assert the right to the *presence* of counsel at the hearing. Instead, Crowley complains that with criminal charges pending against him, he will be unable to freely confer with, or seek the advice of, his Academy advisor since any communications between them will not be privileged and could be used against him at the criminal trial. Crowley maintains that for this reason the hearing should be stayed until the conclusion of the criminal case so that he may have the full benefit of his advisor's assistance.

■ While Crowley's concerns are well-founded, his proposed solution is not. In the Court's opinion, the best way to address the issue is not by staying the hearing, but by affording the cadet the presence of counsel at the disciplinary hearing. Indeed, due process dictates this result.

■ "The power of the District Court to review procedures used at our service academies in the separation or dismissal of cadets and midshipmen is clear. . . . [C]ourts have held that . . . midshipmen must be accorded due process before separation [from the Academy]." *Andrews v. Knowlton* 509 F.2d at 903 (discussing requisites of due process where a West Point cadet faces separation from the academy for violating the honor code) (citations omitted); *see also Tully v. Orr, Secretary of the Air Force,* 608 F.Supp. 1222, 1226 (E.D.N.Y.1985)("The [Air Force] Academy is, of course, subject to the requirements of due process in its disciplining of cadets"); *Lightsey v. King,* 567 F.Supp. 645, 648 (E.D.N.Y.1983)("The service academies of the Unites States, including the Merchant Marine Academy, are not immune from the strictures of Due Process"); *Cody v. Scott,* 565 F.Supp. at 1034 ("Without question, [the West Point cadet] could not be separated from the academy . . . without certain procedural due process"). "Due process is a flexible concept, however, and in this Circuit the standard is clear: in military [disenrollment] proceedings such as [Crowley's], an individual must be given a full and fair hearing. . . . [In addition, the] cadet must receive notice of the charges against him and a fair opportunity to present a defense. He [also] should be given the opportunity to appear, and to pres-

ent statements, evidence and witnesses on his behalf." *Phillips v. United States, et al.,* 910 F.Supp. 101, 108 (E.D.N.Y.1996)(citing *Wasson v. Trowbridge,* 382 F.2d 807). However, "in deciding what process is due [the Courts have] not appl[ied] automatically the full dress standards required for hearings to revoke probation, . . . or parole, . . . or for proceedings which have been described as involving the 'operation of the criminalization and incarceration process beyond the determination of guilt at trial,'.. [or] for termination of welfare payments, . . . or of tenancy in public housing." *Hagopian v. Knowlton,* 470 F.2d at 208 (citations omitted), *overruled in part and on other grounds by Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974)(reversing *Hagopian* to the extent that the Second Circuit held that suspension or dismissal from West Point constitutes sufficient irreparable harm to justify preliminary relief, and forbidding the granting of preliminary relief of reinstatement to a civilian employee of the Government upon a showing of interruption of career and damage to reputation).

Notably, the courts generally have declined to recognize a right to representation by counsel, as a function of due process, in military academy disciplinary proceedings concerning non-criminal acts, such as the accumulation of demerits and violations of the Honor Code. *See, e.g., Hagopian v. Major General Knowlton,* 470 F.2d at 211–12 (cadet attending West Point does not have a due process right to representation by counsel before Board convened to consider dismissal for the accrual of demerits); *Wasson v. Trowbridge,* 382 F.2d 807(Merchant Marine cadet not entitled to representation by an attorney at disciplinary hearing regarding non-criminal violation of Academy regulations); *Tully v. Orr,* 608 F.Supp. 1222 (Air Force Academy cadet does not have a right to have his attorney participate in disenrollment hearing regarding excessive demerits and plagiarism).

This rule is principally motivated by the courts' policy of "tread[ing] lightly on the military domain, with scrupulous regard for the power and authority of the military establishment to govern its own affairs within

the broad confines of constitutional due process." *Friedberg v. Resor,* 453 F.2d 935, 937 (2d Cir.1971); *see also Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842 (1953); *Cortright v. Resor,* 447 F.2d 245 (2d Cir.1971), *cert. denied,* 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240 (1972). Additional reasons to decline to recognize a right to counsel at a military academy hearing include the courts' views that disciplinary proceedings are not judicial in nature and should be kept informal, and that literate and educated cadets should be able to defend themselves. *See* Richmond, "Students' Right to Counsel in University Disciplinary Proceedings," 15 J. Col. and Univ. L. 289, 298 (1989).

By contrast, the courts have acknowledged an accused cadet's due process right to have an attorney present during disciplinary proceedings involving criminal conduct. For example, in *McLaughlin v. Massachusetts Maritime Academy,* 564 F.Supp. 809, a cadet was arrested off-campus for the possession of drugs, and later was charged for the same incident by the academy's disciplinary board. The cadet's request that his attorney be present at his hearing was denied by the board. He then sought injunctive relief compelling the Academy to allow him the assistance of counsel. In granting the injunction, the district court reasoned that:

> "[Military academies] have a significant interest in the promulgation of procedures for the resolution of student disciplinary problems (citations omitted). The limited role of counsel that we are considering, however, would not be very intrusive. Counsel would be present only to safeguard [the cadet's] rights at the criminal proceeding, not to affect the outcome of the disciplinary hearing.... Counsel should, however, be available to consult with [the cadet] at all stages of the hearing, especially while [the cadet] is being questioned." *Gabrilowitz v. Newman,* 582 F.2d 100 (1st Cir.1978). [To conduct] the disciplinary proceeding ... without [the cadet] having the right to a lawyer of his own choice with whom to consult and advise, [would] deprive[ ][him] of due process of law.

The [Court is] not unmindful of the fact that the Academy is an institution designed to provide quasi-military training along with its academic program; it has a disciplinary code designed to foster leadership, discipline and respect for authority. The argument ... that to allow the motion for an injunction would undermine the high level of discipline demanded of cadets is, in [the Court's] opinion, outweighed by the necessity that expulsion proceedings, at least in those instances in which they arise out of the same facts involved in criminal proceedings against the cadet, comport with the requirements of the Due Process Clause.

*Id.* at 812–13.

The Fourth Circuit addressed a closely-related issue in *Midshipman Wimmer v. Lehman, Secretary of the Navy,* 705 F.2d 1402, where the Court held that the Naval Academy "owed [a cadet] no duty to subordinate its general interests" in discharging him for marijuana possession by delaying the disciplinary hearing because of the "overhanging threat of [a] criminal trial" involving the same offense. In arriving at its decision, the Court highlighted the fact that the Academy permitted the presence of counsel at the disenrollment hearing. *Id.* at 1407 (citing *Gabrilowitz v. Newman,* 582 F.2d 100, 103–04 [1st Cir.1978]).

Of particular importance is the case of *Wasson v. Trowbridge,* 382 F.2d 807, where the Second Circuit considered whether a cadet of the Merchant Marine Academy—the same Academy at issue here—was entitled to representation by an attorney at the hearing which preceded his expulsion for tossing another cadet into Long Island Sound in violation of Academy regulations. In finding that due process did not require this, the Court emphasized that *"the proceeding [was] non-criminal in nature,* ... the hearing [was] investigative and not adversarial[,] the government did not proceed through counsel, the individual concerned [was] mature and educated, his knowledge of the events ... enable[d] him to develop the facts adequately through available sources, and ... the other aspects of the hearing taken as a whole [were] fair." *Id.* at 812 (emphasis added).

In *Hagopian v. Major General Knowlton,* 470 F.2d 201, a case involving a disciplinary hearing of the United States Military Academy at West Point, the Second Circuit characterized the *Wasson* standards as "persuasive and controlling." 470 F.2d at 210. The *Hagopian* Court held that a cadet attending the West Point Military Academy did not have a due process right to representation by counsel before a Board convened to consider the cadet's dismissal for the accrual of demerits. *Id.* at 211–12.

A review of this line of cases reveals that the Second Circuit probably would have reached different results in *Wasson* and *Hagopian* had criminal acts been the subject of the disciplinary hearings. In this Court's opinion, these cases confirm that Crowley must be afforded the presence of counsel to satisfy the demands of due process. As opposed to the typical disenrollment procedure precipitated by excessive demerits and other non-criminal misconduct, special concerns arise where a cadet is facing disciplinary action for an unlawful act for which he is separately charged with a crime in the state court.

Crowley correctly emphasizes that if he actively defends himself in disciplinary hearings, he may incriminate himself and provide unwarranted evidence to the prosecutor. The midshipman's only other choice may be to avoid actively contesting the disciplinary charges, thereby aiding his criminal defense, but ensuring his dismissal from the Academy. *See* Richmond, *supra,* at 300–02 (discussing the hazards facing cadets at military academy disciplinary hearings involving criminal acts). Though the choices confronting Crowley do not, in and of themselves, rise to the level of a constitutional violation (*see* III *supra),* the cadet will be deprived of due process if forced to make this crucial decision without the assistance of counsel. *Cf. Gabrilowitz v. Newman,* 582 F.2d at 103–04 (concluding that University of Rhode Island student would be denied due process by being forced to choose, without the advice of counsel, between the risk of expulsion and the risk of self-incrimination at school disciplinary hearing). The presence of counsel will not remove all the perils, but it will enable Crowley to make an intelligent and informed choice as to risks presented. *Id.* at 106.

Accordingly, the Court finds that the best solution, based on the precedents and the facts of this case, is to allow the hearing to go forward with a legal advisor, the plaintiff's attorney, present at the hearing to assist him. Counsel shall not actively participate in the proceedings; his sole function will be to serve as Crowley's legal advisor. The Academy must afford Crowley the opportunity to consult with his attorney throughout the proceedings. In the Court's view, this limited role of counsel will be only slightly intrusive, will not place any administrative or financial burden on the Academy, and will not significantly complicate the hearing. *See Massachusetts Maritime Academy,* 564 F.Supp. at 812.

In view of the foregoing, the hearing shall be adjourned to a date that is mutually convenient for the members of the Board and the plaintiff's counsel, no later than November 25, 1997.

## V. CONCLUSION

For the reasons set forth above, it is hereby

ORDERED, that the plaintiff's motion for a stay of the hearing of the Executive Board of the Academy pending the outcome of the state court criminal prosecution of the plaintiff is denied; and it is further

ORDERED, that the plaintiff be afforded the opportunity to have his attorney present at the hearing to act as his legal advisor. The hearing shall be adjourned to a date that is mutually convenient for the members of the Academy's Board and the plaintiff's counsel, no later than November 25, 1997.

SO ORDERED.